NEW-YORK,.
April, 1823.

The People
*vs.*
C.N. Baldwin
and
C. Baldwin.

## The People *vs.* Charles N. Baldwin and Charlotte Baldwin. *Disorderly House.*

THE defendants were charged in an indictment in the common form for a nuisance.

A Theatre a disorderly house.

The facts of the case were as follows: the defendants were Managers of the Theatre in Warren street, called the City Theatre. It appeared, by the testimony, that the defendants had got up this establishment about one year ago, at considerable expense and trouble ; that it was built partly of brick and partly of wood, in rather an imperfect manner, the sound and noise escaping to the great anoyance of those in the immediate neighborhood. The situation was also proved to be too confined for a Theatre, the lot on which it was erected being about 100 feet deep, and of very moderate width.

It was also proved that a great number of young boys assembled about the door on the evenings of performance using profane language, and making a great noise ; that indecencies were committed about the doors and windows of the inhabitants who lived in the immediate vicinity of the Theatre ; that the applauses inside the Theatre were very loud and boisterous, so much so, that it was impossible those living adjacent to the Theatre, could retire to bed, or if they retired, could sleep before eleven or twelve o'clock ; that the noise proceeding from the house

NEW-YORK.
April, 1823.

The People
vs.
C. N. Baldwin
and
C. Baldwin.

was not similar to that heard in other Theatres, made by the audience in approbation or disapprobation of the actors ; but was a kind of savage yell. It was also proved, that in two or three instances, admission had been given gratis to prostitutes, and women of bad character ; that men and women had been seen in indecent attitudes in the dressing room ; and those facts being proved, by respectable witeesses, *Maxwell, District Attorney*, rested the case.

On the part of the defendants, a great number of witnesses were called, who testified that the same order was kept and observed as in other Theatres ; that similar rules and regulations were declared and in force—they had not seen or heard any riotous conduct in the house— the noise complained of was the applauses given by the audience ; that a great number of respectable people attended ; that a number of peace officers visited the Theatre for the purpose of enforcing order and quietness ; that the noise about the door proceeded from a collection of boys and others, who had no connection with the Theatre, &c.

*Fay, D. Graham*, and *Phœnix*, counsel for the defendants, were proceeding to show that this Theatre was conducted on precisely the same principles as other Theatres, not only in this country, but also in Europe.

*Maxwell* objected. He contended that the government of other Theatres had nothing to do with this, nor could any irregularity in them justify the unlawful conduct of the defendants ; and after all, it was merely matter of opinion ; that whether this Theatre was so conducted as to be a nuisance, depended entirely upon the evidence of facts, in and about that Theatre, and connected with it.

The Court refused to hear evidence of the administration and government of other Theatres, in justification of this.

NEW-YORK, April, 1823.

The People
vs.
C. N. Baldwin
and
C. Baldwin.

The counsel for the defendants, also contended that a Theatre was recognized by law. It was not of itself a nuisance, and only became so by mismanagement; and if they were able to show to the Court and jury, by respectable witnesses, the Theatre was properly governed, it would not be viewed as a nuisance, even if two or three neighbors adjoining, were disturbed; that private convenience must give way to public good.

The Court were of a different opinion, and decided accordingly. They observed that a Theatre *per se*, was not a nuisance, but might become so by the misconduct of those concerned in it; in all such cases,the nuisance ought to be abated; the law regarded so highly the comfort, convenience, and the peaceable and quiet enjoyments of the citizen, that in the case of extensive manufactories and establishments of trade, when they were found detrimental to health of individuals, or where they destroyed their repose, or where the public generally suffered an inconvenience, it was a nuisance, and ought to be abated. It did not depend so much upon the place—a Church might become a nuisance if the conduct of the worshipers there, and others, which was to destroy the peace of the neighborhood.

It was proved by the testimony of Mr. Noah, Mr. Hatfield, and others, that they had occasionally stopped into the Theatre, and had seen no impropriety either in the audience or players; that the plays were performed as in other Theatres; that Mrs. Baldwin was a good actress

NEW-YORK, and a respectable woman.    It was proved by other wit-
April, 1823. nesses, that in many plays it was customary for women

The People, to dress themselves in male costume, and that they might
vs. very well be mistaken for each other, through the windows
C.N. Baldwin
and of the dressing room, by the neighbors, and that the dress-
C. Baldwin. ing room for the different sexes, were entirely distinct and
separate.

The case was summed up to the jury, by *T. Phœnix*
and *D. Graham.*   They contended that this was a novel
prosecution, and not supported by the evidence offered to
the Court and Jury.    It was satisfactorily proved the de-
fendants were people of good characters, and had expend-
ed large sums of money in the erection and preparation of
the Theatre ; a conviction would throw them and a num-
ber of people out of employment—the object of the de-
fendants was laudable and praiseworthy in offering to the
public refined and rational amusement—a Theatre what-
ever were the opinion of some people, was by the liberal
and enlightened looked upon as a place of refined taste,
where the mind might be relaxed, and the judgment im-
proved.    Formerly, the Theatre was the birth place of
genius ; the greatest orators were not ashamed to own their
eminence to the Theatre.

They contended, that by the evidence, it was apparent
it could not come within the definition of a disorderly house;
that even admitting the particular acts of disorder com-
plained of, and testified to by the witnesses, it could not
be considered a nuisance ; to constitute a disorderly house,
it was necessary the acts should be continued, and that
two or three particular acts of disorder could not make it
so ; and cited City Hall Rec. vol. 3. p. 134.   And that
the defendants could not be answerable for the noise and

tumults about the door of the Theatre; they were an as-
semblage of boys and others, over whom the managers
had no control; and argued that that did not make it a
disorderly house; and cited City Hall Rec. vol. 2. p. 53.
They contended that it was not sufficient that the estab-
lishment was merely disagreeable to a few of the neigh-
bors in the immediate neighb0rhood; it must be such a
nuisance as to interrupt the public in the reasonable enjoy-
ment of life and property; and cited City Hall Rec. vol. 4.
p. 87.

NEW-YORK,
April, 1823.

The People
vs.
C.N. Baldwin
and
C. Baldwin.

*Maxwell*, for the prosecution, observed that he thought
it his duty to press this case upon the attention of the
Court and Jury; this Theatre had become so disorder-
ly and noisy that it was a duty he owed to the commun-
ity, and to the neighborhood particularly, to ask for an
abatement of this nuisance. Other Theatres had been
referred to. He meant no invidious comparison by men-
tioning the Park Theatre. It was obvious there was no
comparison between them. The Park Theatre was built
of permanent materials—the walls were thick, and pre-
vented the noise being heard in the neighborhood. Here
was means adequate to the end. Care had been taken
in the erection of it, to prevent the occurrence of disorder
complained of in the other Theatre. The situation of the
two Theatres were different; one was situated in a wide
and public street, surrounded by public houses, with the
Park in front; the other was confined in a retired street,
and surrounded with private houses; it was built partly
of brick and partly of wood, the noise and sound escaping
and disturbing the neighborhood. It was plain the means
of the company were adequate to the object and end of a
Theatre; it was therefore apparent there was no analogy

NEW-YORK, between them.    But the mismanagement of other Theatres had nothing to do with this.    He should be able to show, from the evidence, that the acts complained of, were disorderly, and the Theatre a nuisance.    According to the testimony of a number of respectable witnesses who lived in the immediate vicinity, they were annoyed not only by the noise and tumult, and profane cursing and swearing of those about the door of the Theatre, but also by their indecent conduct about the doors and windows of private houses, and this not only from those that frequented the house, but also from some of the company themselves.—— That it had been satisfactorily proved that prostitutes had been admitted gratis into the Theatre ; and obscene and immodest conduct had been witnessed by the neighbors through the windows of the dressing room ; and that the noises in the house spoken of by the witnesses, were not the plaudits given by the audience to the actors, but was the noise and tumult of a mob.

April, 1823.

The People
vs.
C.N. Baldwin
and
C. Baldwin.

The counsel admitted the law recognized a Theatre, but that when perverted from its true object, it became a nuisance, and ought to be abated.

The Court observed, that it had been objected, that the ward laid in the indictment had not been proved.    But it was unnecessary to prove it.    The Court were obliged to notice it as being in the ward laid in the indictment by the statute law of the State.    And that a house might be a nuisance on several grounds.

1. Where it disturbs the neighborhood, or those living in the immediate vicinity.

2  Where the public peace generally is disturbed.

3. Where the house is dangerous to the community, as a powder magazine, &c.

4. Manufactories, &c. by emitting noisome, unwhole-some, and disagreeable smells.

5. A quiet house, or at least one which did not disturb the neighborhood, might become a nuisance, by gambling. A bawdy-house, although it might not disturb the neighborhood, was, nevertheless, a nuisance, or any house in which immoral or indecent conduct was admitted.

NEW-YORK, April, 1823.

The People, *vs.* C. N. Baldwin, and C. Baldwin.

The Court observed that the good of the community was a paramount object—a Theatre was not of itself a nuisance, but only became so by improper management of those concerned in it ; and when kept under proper regulations, it was well calculated to refine the taste and exalt the sentiments of mankind ; but when the object of it was prostituted—when it became a scene of disorder and riot— when the original design of those institutions were so far lost sight of as to allow indecent and immoral conduct, to the disturbance of the neighborhood, it then became a nuisance, and punishable as such.

. The Court further stated, that the audience had a right to applaud—it was a fair exercise of opinion on the merits and demerits of the performers—it gives force to public sentiment, and it is a lawful way of expressing that sentiment, to applaud a noble action, and decry a vicious one.

After the protection of life and liberty, the law sets the greatest value upon peace and quietness ; it will not permit our rest to be broken and our peace disturbed. The labour, care, and attention of families is so necessary for their support and maintenance, that they cannot have their rest broken, and their repose, so necessary to obtain those objects destroyed.

NEW-YORK, April, 1823.

The law never will put places of public amusement and pleasure upon a footing with the dwellings of private families. The right of individuals to security, peace, and quietness, cannot be destroyed.

The Court observed that it was a simple question for the jury to decide ; they had heard the evidence and the comments upon it by the counsel ; that a great number of witnesses had been called, who testified that they knew of no disorder ; but others had proved acts of indecency had taken place in front of the Theatre, and about the doors and windows of the neighboring houses ; that the neighbourhood had been disturbed by the noise and profane swearing in front of the house—that a man had been seen exposed naked at the window, &c. And concluded, that if the jury were of opinion the defendants were concerned in the management of the Theatre, it would be their duty to find them guilty, if they believe the evidence warranted them in finding them so.

The jury found Charles N. Baldwin guilty, and Charlotte Baldwin not guilty, of keeping a disorderly house.*

*See post. pages 290,291. (Note.)